**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | | |
|---|---|---|
| **CITY BANK,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **EP-10-CV-62-KC** |
| | § | |
| **COMPASS BANK,** | § | |
| | § | |
| **Defendant**. | § | |

## ORDER

On this day, the Court considered Defendant Compass Bank's Rule 12(b)(6) Motion to Dismiss ("Motion") (Doc. No. 5), City Bank's Response ("Response") (Doc. No. 7), and Compass Bank's Reply ("Reply") (Doc. No. 10). For the reasons set forth below, the Motion is **GRANTED** in part and **DENIED** in part.

## I.    BACKGROUND

The instant case embraces the claims brought by City Bank against Compass Bank in connection with the collapse of the Sambrano Corporation. A more complete recitation of the background to this dispute has been set forth in the Court's Order of May 12, 2010 ("May Order"), filed both in cause number EP-09-CV-96-KC and in the instant case as well (Doc. No. 19). An abbreviated version of the facts, taken from City Bank's pleadings, is set forth below. *See* Pl.'s Orig. Pet. (Doc. No. 1 at 6-22).

The Sambrano Corporation ("SamCorp") was a general contracting business in El Paso, Texas. *See* Pl.'s Orig. Pet. ¶¶ 4-5. In September 2005, SamCorp obtained a $3,000,000 line of credit from City Bank, which was secured by liens on company property and personally

guaranteed by certain SamCorp principals.  *Id.* ¶¶ 5-8.  During August and September 2007, SamCorp sought and obtained a $4,000,000 line of credit from State National Bank,[1] which was also secured by various liens and personal guarantees.  *Id.* ¶¶ 18, 21-24.  As one of the purposes of this new line of credit was to refinance the old line of credit, any outstanding indebtedness on the City Bank line of credit was to be retired using some of the proceeds of the State National line of credit.  *Id.* ¶ 18.  However, instead of first paying off the outstanding City Bank indebtedness by a direct transfer of money, State National Bank made the line of credit available to SamCorp directly once it was established, and SamCorp did not effect the payoff.  *Id.* ¶¶ 32-33.

In January 20008, the two banks finally learned that both lines of credit were open and drawn down simultaneously, which led both banks to call SamCorp in default and commence sometimes conflicting collection efforts.  *Id.* ¶¶ 39-47.  City Bank avers that, while it achieved some success in recovering monies owed to it, approximately $1,500,000 remains unpaid.  *Id.* ¶ 46.  Subsequently, City Bank brought claims against Compass Bank for negligence, breach of contract, and money had and received.  *Id.* ¶¶ 48-57.[2]  Compass Bank seeks to have these claims dismissed pursuant to Rule 12(b)(6).  *See generally* Mot.

## II.   DISCUSSION

---

[1]   This took place while State National Bank was an independent entity; Compass Bank is now State National Bank's successor in interest for the purposes of this case and any references to the two institutions are functionally interchangeable.  Pl.'s Orig. Pet. ¶ 2.

[2]   City Bank also previously brought claims against Compass Bank sounding in fraudulent transfer, conversion, and tortious interference with contract; those claims were addressed in the Court's May Order.

### A.    Standard

A motion to dismiss pursuant to Rule 12(b)(6) challenges a complaint on the basis that it fails to state a claim upon which relief may be granted.  FED. R. CIV. P. 12(b)(6).  In ruling on a Rule 12(b)(6) motion, the court must accept well-pleaded facts as true and view them in a light most favorable to the plaintiff.  *Calhoun v. Hargrove*, 312 F.3d 730, 733 (5th Cir. 2002)*; Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000).  Still, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and quotation marks omitted); *see also Plotkin v. IP Axess, Inc.*, 407 F.3d 690, 696 (5th Cir. 2005) (stating that a court need not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions.").

Though a complaint need not contain "detailed" factual allegations, the "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true."  *Twombly*, 550 U.S. at 555 (internal citation omitted).  Thus, to survive a motion to dismiss, a plaintiff's complaint must allege sufficient facts "to state a claim to relief that is plausible on its face."  *Id.* at 570.  Nevertheless, "a well-pleaded complaint may proceed even if its strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'"  *Id.* at 556 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

### B.    Negligence Claim

City Bank asserts a claim of negligence against Compass Bank in connection with the foregoing events.  *See* Pl.'s Orig. Pet. ¶¶ 48-50.  A claim for negligence encompasses four key

elements:  1) the defendant owed the plaintiff a duty; 2) the defendant breached that duty; 3) the

breach proximately caused the plaintiff's injuries; and 4) the plaintiff, as a result, suffered

damages.  *See Mission Petroleum Carriers, Inc. v. Solomon*, 106 S.W.3d 705, 710 (Tex. 2003).

Whether one party owes a duty of care to another party, under any given set of circumstances, is a

question of law, and Texas common law takes "into account not only the law and policies of this

State, but the law of other states and the United States" when deciding this issue.  *SmithKline*

*Beecham Corp. v. Doe*, 903 S.W.2d 347, 351 (Tex. 1995).  Courts consider various policy

factors, including the "risk, foreseeability, and likelihood of injury weighed against the social

utility of the actor's conduct, the magnitude of the burden of guarding against the injury, and the

consequences of placing the burden on the defendant" when deciding whether a duty of care

exists between two parties.  *Greater Houston Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex.

1990).

> ### 1.    Duty of care

Compass Bank argues that it did not owe a duty of care to City Bank in connection with

the SamCorp refinancing.  Mot. ¶ 9.  It argues that it had no existing relationship with City Bank

in the context of the SamCorp transactions and that a duty of care should not be implied from its

internal operating procedures, which may have called for a direct payment to an existing lender

in a refinancing situation.  *See id.*  Compass Bank also cites *Owens v. Comercia Bank*, 229

S.W.3d 544, 547 (Tex. Ct. App. 2007), to support the proposition that Texas law imposes no

duty of care on banks with regard to unrelated third parties, even if a bank's internal policy

would have prevented the third party harm but was ignored in a particular case.  *Id.*  City Bank

responds that this issue is meant to be addressed on summary judgment and points out that

*Owens* itself was a summary judgment opinion. Resp. 3-4.  There is no prohibition, though, on a court's consideration of a party's duty of care when deciding a motion to dismiss.  *See Davis v. Dallas County*, 541 F. Supp. 2d 844, 850-53 (N.D. Tex. 2008) (discussing the duty of care issue while ruling on a Rule 12(b)(6) motion to dismiss).  Accordingly, the Court addresses the substance of this issue here.

Courts frequently cite Texas negligence law for the proposition that "a bank owes no duty to someone who is not a customer and with whom the bank does not have a relationship." *Owens*, 229 S.W.3d at 547.  This rule, however, is generally applied in cases where a plaintiff claims to have been defrauded, or otherwise victimized, by an account holder at a bank, and proceeds to claim against the bank under the theory that, had the bank more closely supervised all of its customer accounts, the bank could have surmised that a customer was operating a fraudulent scheme.  *Id.* at 546-47; *see also Red Rock v. Jafco, Ltd.*, 79 F.3d 1146, 1996 WL 97549, at *4 (5th Cir. 1996) (unpublished opinion) ("A bank, however, owes no legal duty of care to investigate or disclose its customers' conduct or intent to third parties with whom the bank's customers do business.").  Where the potential victim's identity, the mode of harm, and the way to avoid that harm are all particularly known to the bank in advance, by contrast, Texas law may well impose a duty of care on the bank in connection with that victim.  *See Guerra v. Regions Bank*, 188 S.W.3d 744, 747 (Tex. Ct. App. 2006) (citing the traditional factors of "risk, foreseeability, and likelihood of injury weighed against the social utility of the actor's conduct, the magnitude of the burden of guarding against the injury, and the consequences of placing the burden on the defendant").  Such a circumstance differs markedly from a case in which a fraud victim argues that a bank should have been continually monitoring all transactions over all

customer accounts for unspecified indicia of fraudulent activity.

The facts in the instant case, as pleaded by City Bank, put this case in the exception noted above.  Here, according to the pleadings, State National Bank knew of the existing line of credit between City Bank and SamCorp, knew that it was supposed to be paid off from the new line of credit before cash was advanced to SamCorp, knew or should have known that the most appropriate and secure way to retire the City Bank loan was a bank-to-bank payment, failed to use that method, and knew or should have known that SamCorp's having two lines of credit open and drawn down at the same time was dangerous to SamCorp and its creditors or stakeholders.  Pl.'s Orig. Pet. ¶¶ 18-19, 30-34, 48-50.  In a case of negligent execution of a refinancing transaction (by placing money in the hands of the borrower with the mere hope that it would be paid to the old lender, rather than remitting it directly), it appears that the traditional factors all weigh in favor of finding a duty of care.  *See Guerra*, 188 S.W.3d at 747 (outlining the factors).  The risk and foreseeability of harm to City Bank seems clear, and the likelihood of harm is not inconsiderable should SamCorp pocket or spend the proceeds instead of paying them over properly.  Weighed against these concerns is the questionable social utility of giving the money to the borrower directly,[3] the trivial costs involved in avoiding this path by means of making a direct bank-to-bank payment, and the open question of who, if not the new lender, may better

---

[3]      The social utility of refinancing transactions themselves is not at issue in this case, as City Bank is only complaining of the way in which the SamCorp transaction was executed, not the fact that a refinancing was undertaken at all.  Accordingly, the conduct at issue, whose social utility must be measured as part of a duty of care analysis, is not the overall refinancing.  Rather, the conduct at issue is the particular choice to execute a refinancing by placing cash in the hands of the borrower before the old loan is paid off, instead of first executing a bank-to-bank payment.

ensure that the old lender is repaid when the new lender decides to transact a refinancing with the borrower.

Compass Bank argues that "SNB was entitled to assume that City could protect itself." Mot. ¶ 9. It claims that direct payment to the old lender was primarily meant to benefit Compass Bank, by retiring the old loan to ensure the seniority of the new lender's liens, and should therefore not be a standard of care owed to others. *Id.* It is unclear, though, as to how City Bank could have protected itself from a negligently executed refinancing transaction when the decisions as to how to initiate and carry out that transaction were taken by third parties without any notification to City Bank. Moreover, Compass Bank cites no precedent and offers no logic to support the contention that standards of care that benefit a defendant's own interests cannot also be legally enforceable as protective of a plaintiff. Indeed, in some areas of tort law, such as traffic accidents, it is almost axiomatically true that all standards of care in the realm of safe driving, if adhered to, would benefit both tortfeasors and accident victims. The dual-benefit nature of these standards is no reason to conclude that they are not legally enforceable against tortfeasors when harms befall their victims. Thus, a rule requiring a direct bank-to-bank payment could have operated both for the benefit of Compass Bank and have been a standard of care owed by Compass Bank to others, just as a rule against driving with excessive speed protects both the prospective speeder as well as his potential victim.

While there appears to be no Texas precedent which squarely addresses the issue of a negligently executed refinancing, the Court is aware of a relevant case decided by the Maryland state supreme court. *See Chicago Title Ins. Co. v. Allfirst Bank*, 905 A.2d 366 (Md. 2006). Texas courts, when interpreting Texas common law, often turn to out-of-state cases for guidance;

accordingly, this Court refers to *Chicago Title* for guidance in the instant case. *See Fairfield Ins. Co. v. Stephens Martin Paving, LP*, 246 S.W.3d 653, 662-63 (Tex. 2008) (holding that Texas courts may look to out-of-state precedent); *see also SmithKline Beecham*, 903 S.W.2d at 351 (same).

In *Chicago Title*, a borrower ("Shannahan") was seeking to refinance loans secured by liens on his house. 905 A.2d at 369. The new lender, Armada Mortgage Corporation, retained the services of First Equity and the Chicago Title Insurance Company to effect this transaction. *Id.* at 368-69. First Equity issued a number of checks in order to effect the refinancing, including a check mailed directly to Mellon Bank to retire a first mortgage on the property and a check mailed directly to Farmers Bank to retire partially a second mortgage on the property. *Id.* at 370. More controversially, First Equity also delivered two checks to Shannanhan personally – one payable to him, which represented his "cash out" on the refinance, and another payable to Farmers Bank, which was to complete the retirement of second mortgage. *Id.* Shannahan delivered both checks to a branch of Farmers Bank, at which he also happened to hold a checking account, and that bank credited both checks towards Shannanhan's checking account instead of crediting the second check towards the outstanding loan balance. *Id.* First Equity eventually learned that the earlier loan and lien held by Farmers Bank had not been retired, due to this mis-crediting, and sued both its bank (Allfirst Bank) as well as Farmers Bank in order to ascertain who was responsible for misdirecting its money. *Id.* at 371.

The Maryland state supreme court held that Farmers Bank was responsible to First Equity under a theory of negligence, despite the fact that Farmers Bank and First Equity had no pre-existing business relationship in the context of the Shannahan loans. *Id.* at 382-83. This was

because the second check was payable to Farmers Bank directly – not to Shannahan – and the surrounding circumstances made it clear that it was meant to complete the retirement of the second mortgage. *Id.* The court held that Farmers Bank's gratuitous crediting of its own money to Shannahan's personal account was its own mistake and that First Equity should not bear the burden of this loss. *Id.* While this holding concerns a case of negligence on the part of the old lender, as opposed to negligence of a new lender, it establishes the proposition that a bank may be liable to a non-customer if it causes harm to that non-customer by negligently executing its part of a refinancing transaction. Moreover, the *Chicago Title* court observed, in passing, that the new lender's entrustment of the final payoff check to the refinancing borrower could itself constitute contributory negligence, and should thus be evaluated by the lower courts in further proceedings. *Id.* at 383 n.12.

If First Equity's agent's entrusting the Farmer's Bank payoff check to Shannahan could constitute contributory negligence, then Compass Bank's making the full line of credit available to SamCorp, with the understanding that SamCorp would arrange to repay City Bank, could qualify as negligence *a fortiori*. The final payoff check in *Chicago Title* was made explicitly payable to Farmers Bank – a procedural safeguard which itself should have prevented mis-crediting the funds – yet the Maryland state supreme court was still willing to contemplate that entrusting such a check to the borrower could be negligent. In the instant case, SamCorp was entrusted with clear, unrestricted funds from its new line of credit, with no procedural safeguards in place to ensure that it applied the first tranche of such funds towards paying down its old line

of credit.[4]  This scenario poses an even greater risk that the funds may be misdirected or

misappropriated.

There is one critical doctrine, however, as-yet unaddressed by the parties, which casts

some doubt as to the availability of a Texas law negligence claim in the instant case.  The

common law in most states restricts the availability of negligence claims against alleged

tortfeasors when the harms suffered by the plaintiff are deemed to be purely "economic" harms,

unaccompanied by personal injury or property damage.  *See, e.g.*, *Coastal Conduit & Ditching,*

*Inc. v. Noram Energy Corp.*, 29 S.W.3d 282, 285-90 (Tex. Ct. App. 2000).  The damages alleged

by City Bank in the instant case are plausibly economic-only in nature.  In *Chicago Title*, the

Maryland state supreme court articulated its "intimate nexus" test, which allows for a recovery

sounding in negligence for purely economic losses under certain circumstances.  *See Chicago*

*Title*, 905 A.2d at 381-82.  Such circumstances were found in that case, and by analogy could

plausibly exist in the instant case, as both cases involve refinancing transactions where the banks

know of the positions of all the other parties.  *See id.*  However, it is unclear whether Texas

common law would recognize such a test.  Instead, it seems possible that Texas law precludes

recovery under such circumstances, notwithstanding the policy arguments in favor of such an

approach.  *See Coastal Conduit*, 29 S.W.3d at 287-89 (holding that Texas has a strict rule against

---

[4]        Farmer's Bank mis-crediting of the funds in the face of this
procedural safeguard, of course, was the primary form of
negligence found in *Chicago Title*.  As there was no such
procedural safeguard in place in the instant case, no party can
be found negligent on a strictly analogous basis.  However,
Compass Bank's entrustment of funds to SamCorp without any
procedural safeguards at all is analogous, and potentially more
negligent, than First Equity's entrustment of the final payoff
check to Shannahan, instead of sending it to Farmer's Bank
directly.

recovery under negligence in cases where the harms are purely economic); *see also Express One v. Steinbeck*, 53 S.W.3d 895, 898-99 (Tex. Ct. App. 2001) (explaining policy reasons).

The main policy argument against economic-harm liability discussed in *Express One* is "the difficulty, if not impossibility, of placing a reasonable limit on a defendant's liability to those who suffer solely economic damages." *Express One*, 53 S.W.3d at 899. The intimate nexus test adopted by Maryland is explicitly meant to allay this concern and provide some means to curb such potentially limitless liability for purely economic harms. *Chicago Title*, 905 A.2d at 381. It remains unclear, however, whether Texas courts would be satisfied with this solution to the problem; at least one intermediate Texas court of appeals rejected similar solutions from other states in favor of a strict rule against recovery for purely economic harms under the tort of negligence. *See Coastal Conduit*, 29 S.W.2d at 288 (rejecting holdings from California and New Jersey). Accordingly, the Court does not dismiss the negligence claim at this point, but requires the parties to brief the purely economic loss issue as part of any summary-judgment pleadings.

### 2.    Other negligence elements

The remaining three elements of a negligence claim are breach, causation and damages. *See Mission Petroleum Carriers*, 106 S.W.3d at 710. Compass Bank argues that City Bank's pleadings are "conclusory and indistinct" on these issues and thus fail to satisfy the *Twombly* standard. Mot. ¶¶ 8-10. This argument has little merit. City Bank has included a great deal of factual detail in its pleadings, setting forth the circumstances behind the claims at issue and making clear the way in which it believes the elements of the negligence claim have been satisfied. *See* Pl.'s Orig. Pet. ¶¶ 5-47. City Bank sets forth the dates and amounts involved in setting up and drawing down the new line of credit (alleged breach), sets forth how SamCorp's

actions placed it in default with both banks (alleged causation), and the events surrounding the collection efforts of both banks and the resulting collapse of SamCorp (alleged causation and damages). *See id.* Rather, it is Compass Bank's contentions concerning City Bank's pleadings which are themselves conclusory and indistinct, repeating language from legal precedent without explaining how any of the three remaining elements were insufficiently pleaded. *See* Mot. ¶ 10. Accordingly, the Court does not dismiss this claim on the basis that the last three elements of negligence fail to satisfy the pleading requirements.

### 3. Intervening cause

Compass Bank also argues that the actions of "SamCorp and its principals" served as "new and independent, intervening causes" of the harms at issue, which precludes Compass Bank's liability under a negligence theory. Mot. ¶ 10. Texas law regards "a new and independent cause" as one "that intervenes between the original wrong and the final injury such that the injury is attributed to the new cause rather to the first and more remote cause." *Dew v. Crown Derrick Erectors, Inc.*, 208 S.W.3d 448, 450 (Tex. 2006). But not every intervening act is an independent cause which excuses the earlier actor from liability. "If the intervening force was foreseeable at the time of the defendant's negligence, the force is considered to be a 'concurring cause' of the plaintiff's injuries and the defendant remains liable for the original negligence." *Id.* at 451 (internal citations omitted). As one commentator put it, where the "the first actor negligently creates a risk of harm and the second actor negligently triggers the risk, both actors are tortfeasors, both are causes in fact of the harm, and both are commonly held liable to the plaintiff." DAN B. DOBBS, THE LAW OF TORTS § 186 (2000).

The facts of the instant case, as pleaded by City Bank, fall squarely within the realm of

concurring cause.  Compass Bank created a risk of loss in this situation by making the full

amount of the new line of credit available to SamCorp without first retiring the old loan with a

bank-to-bank payment.  SamCorp's subsequent acts could plausibly be seen as a foreseeable

result of the situation created by Compass Bank – merely pulling the trigger that was initially set

by Compass Bank.  On the such facts, there is no reason to conclude that SamCorp's acts must be

regarded as a new and independent cause that would relieve Compass Bank of liability; rather,

the opposite would appear to be the case.  Thus, the Court does not dismiss the negligence claim

on such a theory.

C.   **Contract Claim**

1.   **Third party beneficiary status**

In addition to its claim for negligence, City Bank has also brought a contracts claim

against Compass Bank, asserting that it was an intended third-party beneficiary of the contract

executed between SamCorp and State National Bank, and that such third-party rights have been

violated by the way in which the refinancing was executed.  Pl.'s Orig. Pet. ¶¶ 51-54.  Compass

Bank has moved to dismiss this claim, arguing that City Bank does not, in fact, qualify as a third-

party beneficiary under the contract at issue.  Mot. ¶¶ 11-12.

A third-party beneficiary may be entitled to sue over a contract if the contracting parties

intended to secure a benefit to the third party and entered into the contract "directly for the third

party's benefit."  *MCI Telecomm. Corp. v. Tex. Util. Elec. Co.*, 995 S.W.2d 647, 652 (Tex.

1999).  By contrast, a third party who is only an incidental beneficiary of a contract between

other parties cannot sue to enforce the contract.  *Id.*  A third-party beneficiary can either be a

donee or a creditor beneficiary of one of the parties to the contract.  *See id.*  Here, it is clear that

City Bank would stand as a creditor beneficiary if it was a beneficiary at all, as SamCorp owed

City Bank money and the new loan would serve to refinance that debt. *See* Pl.'s Orig. Pet. ¶ 32.

Compass Bank argues that "City [Bank] makes no allegation that any loan agreement or contract

between SamCorp and SNB conferred any benefit upon City" and observes that City Bank did

not attach copies of the documents in question to the pleadings. Mot. ¶ 12. But this

characterization of City Bank's pleadings is wrong. City Bank avers, in so many words, that the

"State National Loan Documents required State National to directly pay off SamCorp's

outstanding liability to City Bank." Pl.'s Orig. Pet. ¶ 32. Seeing an old debt paid off is a benefit,

as the existence of the category of "creditor beneficiary" makes clear. Moreover, while it is

permissible to attach critical documents, such as contracts, to the pleadings in a civil case,

Compass Bank points to no rule of law *requiring* such attachments, or allowing negative

inferences to be drawn from their absence. *See Kennedy v. Chase Manhattan Bank*, 369 F.3d

833, 839 (5th Cir. 2004) (permitting a trial court to consider an agreement attached to the

complaint at the motion to dismiss stage, but not requiring attachments in contract cases).

Instead, even if a negative inference may be drawn from the lack of an attachment, "a

well-pleaded complaint may proceed even if its strikes a savvy judge that actual proof of those

facts is improbable, and that a recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556

(internal citations and quotation marks omitted).

        In its Reply, Compass Bank invites the Court to examine the loan documents filed into

evidence in the companion case EP-09-CV-96-KC, arguing that judicial notice may be had of

these documents and that reference to judicially-noticed material does not convert the instant

Motion into one for summary judgment. Reply ¶ 9. Compass Bank argues that a fair reading of

those documents would rebut City Bank's averment that the loan documents in question were sufficient to confer third-party beneficiary status. *Id.* The Court, however, declines this invitation to wade into hundreds of pages of miscellaneous evidence at this stage in the proceedings. Instead, the Court instructs the parties to brief this matter on the evidence at the summary judgment stage. City Bank's pleadings are facially sufficient; thus, the contract claim should not be dismissed.

### 2.    Statute of frauds

Compass Bank also argues that the Texas statute of frauds serves to defeat the contract claim. Mot. ¶ 13 (citing TEX. BUS. & COMM. CODE § 26.02). It argues that, because "City Bank does not allege that its third party beneficiary status arises from" an agreement that satisfies the statute of frauds, the claim should fail for insufficient pleading. This argument misstates the law. The Fifth Circuit has held that "pleadings need not identify every element of [a] claim, particularly where the contested elements relate to the affirmative defense of the statute of frauds." *EPCO Carbon Dioxide Prods., Inc. v. JP Morgan Chase Bank*, 467 F.3d 466, 470 (5th Cir. 2006). A trial court may dismiss a claim on a Rule 12(b)(6) motion on the basis of an affirmative defense, but only if that "defense appears on the face of the complaint." *A2D Techs., Inc. v. MJ Sys., Inc.*, 269 F. App'x 537, 541 (5th Cir. 2008) (citing *EPCO*, 467 F.3d at 470).

In the instant case, it is not clear that facts allowing the invocation of the statute of frauds appear on the face of City Bank's complaint. The statute of frauds provisions cited by Compass Bank only require that a loan agreement involving a bank, whose value exceeds $50,000, must be in writing and signed by the party to be bound, and that all rights and obligations of the parties to the loan are to be determined solely by reference to that signed writing. *See* Mot. ¶ 13; *see also*

-15-

TEX. BUS. & COMM. CODE § 26.02(b)-(c).  City Bank avers that a loan agreement, with relevant

third-party beneficiary terms, existed between SamCorp and State National Bank.  *See* Pl.'s Orig.

Pet. ¶ 32.  Under the *EPCO* doctrine this is sufficient; City Bank need not aver particularly that

the agreement was in writing and signed.  *See* 467 F.3d at 470.  Unless City Bank specifically

averred that the agreement was oral or was unsigned, it is not facially apparent that the statute of

frauds undermines its claim.  *Cf. Sullivan v. Leor Energy LLC*, No. H-05-CV-3913, 2006 WL

2792909, at *2 (S.D. Tex. Sept. 27, 2006) (holding that the affirmative defense of the statute of

frauds was available at the motion to dismiss stage when the complaint acknowledged on its face

that the employment agreement at issue was unsigned and contemplated a term of more than one

year).  Accordingly, the Court does not dismiss the contract claim on the basis of the statute of

frauds.  Instead, the Court can only evaluate this defense on the evidence at the summary

judgment phase.

### D.     Money Had and Received Claim

City Bank also asserts a claim for money had and received, in connection with a check for

approximately $1,000,000 that was paid by the City of El Paso to SamCorp for some

construction work.  *See* Pl.'s Orig. Pet. ¶¶ 36, 55-57.  That check was deposited in SamCorp's

operating account held at Compass Bank in December 2007, shortly before the defaults were

called and SamCorp collapsed.  *Id.* ¶¶ 36-37.

Money had and received is an equitable remedy under Texas law.  *Edwards v. Mid-

Continent Office Distribs., L.P.*, 252 S.W.3d 833, 837 (Tex. Ct. App. 2008).  "[I]t seeks to

prevent unconscionable loss to the payor and unjust enrichment to the payee."  *Id.* (citing *Bryan

v. Citizen's Nat'l Bank in Abilene*, 628 S.W.2d 761, 763 (Tex. 1982)).  "To prove the claim, a

plaintiff must show that a defendant holds money which in equity and good conscience belongs to him." *Id.* (citing *Best Buy Co. v. Barrera*, 248 S.W.3d 160, 162-63 (Tex. 2007)).

Under this standard, City Bank's claim for money had and received cannot survive. City Bank avers in its pleadings that Compass Bank applied the $1,000,000 payment as a credit toward the outstanding State National loan, implying that Compass Bank kept these proceeds. *See* Pl.'s Orig. Pet. ¶ 37. This could support such a claim if considered alone. But Compass Bank did not actually retain this payment as a credit against the State National loan through the period of SamCorp's collapse; rather, it re-advanced the money from the line of credit to the operating account shortly before the collapse. *See* May Order 33-34.[5] The Court also found that the funds, then apparently held in the operating account, were spent and dissipated before or during the period in which SamCorp collapsed and that Compass Bank was not continuing to hold this sum of money for itself. *Id.* Thus, given the facts as already determined by the Court, City Bank cannot show that Compass Bank "holds money which in equity and good conscience belongs to" City Bank. *Edwards*, 252 S.W.3d at 837. To whom the money belongs is hardly the issue at this stage, because Compass Bank simply is not holding it. Accordingly, the claim for money had and received is dismissed by the Court.

## III.  CONCLUSION

For the reasons set forth above, the Motion is **GRANTED** in part and **DENIED** in part. The Motion is **DENIED** with respect to City Bank's first two claims; namely, the claims sounding in negligence and contract. The Motion is **GRANTED** with respect to the money had

---

[5] The Court may rely on its previous findings of fact in connection with these issues. *See Mowbray v. Cameron County*, 274 F.3d 269, 281 (5th Cir. 2001).

and received claim, as this claim is incompatible with the facts that the Court has already found in connection with the subject-matter of this case.

In connection with the negligence claim, the Court **ORDERS** the parties to brief the issue of the availability of such a remedy under Texas law, in situations where the harms are purely economic, upon submitting any summary judgment pleadings.

In connection with the contract claim, the Court **ORDERS** the parties to make any evidence-based arguments at the summary judgment stage, using appropriate citations to the documents at issue.

**SO ORDERED.**

**SIGNED** on this 2nd day of July, 2010.

KATHLEEN CARDONE
UNITED STATES DISTRICT JUDGE